UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JERALD GIPSON,

                    Plaintiff,

vs.

                                Case No. 3:15-cv-827-J-39PDB
K. RENNINGER AND LT.
J. GREENE,

                    Defendants.

_____


**ORDER**

**I.  Status**

        Plaintiff is an inmate confined in the Florida penal system.

He is proceeding pro se on a Third Amended Complaint (Third Amended

Complaint) (Doc. 58) pursuant to 42 U.S.C. § 1983.  He filed his

original Complaint (Doc. 1) on June 30, 2015, pursuant to the

mailbox rule.  This cause is before the Court on Defendants' Motion

for Summary Judgment (Motion) (Doc. 68).[1]  Plaintiff responded.

Plaintiff's Response to Defendants' Motion for Summary Judgment

(Response) (Doc. 85).  See Order (Doc. 9); Notice (Doc. 69).  The

Court granted Plaintiff's motion to supplement his response, Order

(Doc. 89), and the Court will consider the exhibits attached to the

Supplement (Doc. 86).

_____

        [1] In this opinion, the Court references the document and page
numbers designated by the electronic filing system.

## II. Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" <u>Ekokotu v. Federal Exp. Corp.</u>, 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting <u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007)), <u>cert. denied</u>, 565 U.S. 944 (2011).

## III. The Third Amended Complaint

The alleged facts supporting the Third Amended Complaint are set forth at pages 10-18. Although difficult to read, the Court liberally construes the Third Amended Complaint as presenting the following facts. Plaintiff states that on May 29, 2015, he was confined in a cell as an inpatient transitional care unit inmate at Suwannee Correctional Institution (SCI). <u>Id</u>. at 10. At approximately 12:45 a.m., Defendant Renninger did a security check of the dormitory and came by Plaintiff's cell. <u>Id</u>. at 11. Plaintiff told Defendant Renninger that he had a serious injuries from a previous beating, causing him to blank out, suffer severe pain, and to have headaches. <u>Id</u>. Plaintiff also told Defendant Renninger that he felt he would have a heart attack from physical

and emotional stress caused by his treatment in prison. <u>Id</u>. Plaintiff claimed to have a heart murmur and a hole in his heart. <u>Id</u>. Defendant Renninger told Plaintiff to get off of the door and threatened Plaintiff through denial of medical care. <u>Id</u>. Plaintiff alleges that he asked Renninger to call the nurse because Plaintiff was declaring a medical emergency due to sharp, severe chest pains and blanking out, but Renninger "neglected" Plaintiff's medical emergency. <u>Id</u>. at 12.

Defendant Renninger and Nurse Handcocks [sic] came by during her rounds, and Plaintiff told them he was declaring a medical emergency. <u>Id</u>. Nurse Handcocks and Renninger did not accept Plaintiff's declaration of a medical emergency, stating that if an inmate is not bleeding or cutting himself, it is not a medical emergency. <u>Id</u>.

Plaintiff was placed on property restriction and told to strip down to his boxers and pack up his property. <u>Id</u>. at 13. His mattress, sheets, and blanket and were stored away. <u>Id</u>. Thirty minutes later, Defendants Greene and Renninger came by and told Plaintiff if he called out for another medical emergency, Plaintiff would not eat for a week, and if he wrote a grievance or lawsuit against them, Defendants would break Plaintiff's jaw and send him to the hospital. <u>Id</u>.

After being denied a medial emergency by the Defendants and the nurse, Plaintiff feared that he would have a heart attack from

3

the physical and emotional stress caused by his treatment in prison. _Id_. at 14. At approximately 3:00 p.m., Defendant Greene saw Plaintiff naked in his cell. Defendant Greene made verbal sexual comments about Plaintiff's body parts. _Id_. Plaintiff continued to have pain and headaches, feeling like he was blanking out. _Id_. He slept on the hard concrete bunk in temperatures below 50 degrees. _Id_.

Plaintiff states he did not violate any Florida Department of Corrections' (FDOC) rules. _Id_. at 15. Plaintiff contends that his medical records will show that he has severe heart problems of an enlarged heart, a heart murmur, and a hole in his heart. _Id_. He also states that the records will verify his head injuries. _Id_. Plaintiff contends that his medical condition was exacerbated by delay and failure to provide urgent medical care. _Id_.

## IV. Exhaustion of Administrative Remedies

Defendants assert that Plaintiff failed to properly avail himself of the grievance process with regard to his claims. The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court. Title 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

4

jail, prison or other correctional facility until such administrative remedies as are available are exhausted."

In this regard, Defendants bear the burden of proving a failure to exhaust available administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), relying on Jones v. Bock, 549 U.S. 199 (2007). The Court has guidelines for reviewing a prisoner civil rights action for exhaustion compliance:

> Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819, 1822, 149 L.Ed.2d 958 (2001). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006) (quotation omitted). To properly exhaust, a prisoner must "[c]ompl[y] with prison grievance procedures." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922-23, 166 L.Ed.2d 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015).

The Court recognizes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district

court, but is mandatory.") (citation omitted).  The Supreme Court

has stated that "failure to exhaust is an affirmative defense under

the PLRA[.]"  <u>Jones</u>, 549 U.S. at 216.  Although, "the PLRA

exhaustion requirement is not jurisdictional[,]"  <u>Woodford</u>, 548

U.S. at 101, "exhaustion is mandatory under the PLRA[;]" therefore,

"unexhausted claims cannot be brought."  <u>Pavao v. Sims</u>, 679 F.

App'x 819, 823 (11th Cir. 2017) (per curiam) (citation omitted).

Also, the only recognized limitation is availability:

> "The only limit to § 1997e(a)'s mandate is the
> one baked into its text: An inmate need
> exhaust only such administrative remedies as
> are 'available.'" 136 S. Ct. 1850, 1862
> (2016). For an administrative remedy to be
> available, the "remedy must be 'capable of use
> for the accomplishment of [its] purpose.'"
> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th
> Cir. 2008) (quoting <u>Goebert v. Lee Cty</u>., 510
> F.3d 1312, 1322-23 (11th Cir. 2007)).

> In <u>Ross</u>,[2] the Supreme Court identified
> three circumstances in which administrative
> remedies would be considered unavailable.
> First, "an administrative procedure is
> unavailable when (despite what regulations or
> guidance materials may promise) it operates as
> a simple dead end—with officers unable or
> consistently unwilling to provide any relief
> to aggrieved inmates." 136 S. Ct. at 1859.
> Second, "an administrative scheme might be so
> opaque that it becomes, practically speaking,
> incapable of use. In this situation, some
> mechanism exists to provide relief, but no
> ordinary prisoner can discern or navigate it."
> <u>Id</u>. Third, an administrative remedy is
> unavailable "when prison administrators thwart
> inmates from taking advantage of a grievance
> process through machination,

---

[2] <u>Ross v. Blake</u>, 136 S.Ct. 1850 (2016).

6

misrepresentation, or intimidation." Id. at 1860.

Davis v. Sec'y, Dept. of Corr., No. 3:15-CV-649-J-34JRK, 2017 WL 1885366, at *3-4 (M.D. Fla. May 9, 2017).

In reviewing the question of exhaustion, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint. Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (citing Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000) (en banc)). Indeed, "[t]he time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is *when the legal action is brought*, because it is then that the exhaustion bar is to be applied." Wheeler v. Davis, No. 5:14CV271/WS/CJK, 2017 WL 1029119, at *3 (N.D. Fla. Feb. 6, 2017) (report and recommendation) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007)) (emphasis in Wheeler), report and recommendation adopted by 2017 WL 1027035 (N.D. Fla. Mar. 16, 2017).

Therefore, the relevant question before this Court is whether Plaintiff properly exhausted available administrative remedies as of June 30, 2015. The question of availability of the procedure goes to whether the administrative procedure was available before June 30, 2015, prior to the filing of the initial complaint. Construing the exhaustion requirement otherwise would render the PLRA "a toothless scheme." Woodford, 548 U.S. at 95.

7

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. **Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."** Pozo,[3] 286 F.3d, at 1024. . . .

Id. at 90 (emphasis added). In fact, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The Court must now make findings on the disputed issues of fact to decide whether administrative remedies were available to Plaintiff at SCI, and if they were, whether he properly exhausted his administrative remedies. Since the parties have not requested an evidentiary hearing on this issue and they have submitted evidence for the Court's consideration, the Court proceeds to resolve the material questions of fact based on the documents before the Court. Bryant, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the

---

[3] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied, 537 U.S. 949 (2002).

submitted papers when addressing the PLRA's exhaustion of remedies requirement).

The Florida Department of Corrections (FDOC) provides an internal grievance procedure. See Chapter 33-103, Florida Administrative Code (F.A.C.). Thus, to determine whether Plaintiff exhausted his administrative remedies, this Court must examine the relevant documents to determine whether the incidents in question were grieved. If these incidents were grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure.

> In Florida, the grievance process consists of a three-step procedure. An inmate must first file an "informal grievance ... to the staff member who is responsible in the particular area of the problem." Fla. Admin. Code Ann. § 33-103.005(1). The second step requires the inmate file a formal grievance with the warden. Id. § 33-103.006(1)(a). If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC. Id. § 33-103.007.

Kozuh v. Nichols, 185 F. App'x 874, 877 (11th Cir. 2006) (per curiam), cert. denied, 549 U.S. 1222 (2007).

As a consequence, if Plaintiff filed a grievance and attempted to exhaust his administrative remedies, he would have needed to submit an initial grievance with the appropriate staff, a formal grievance with the warden, and then an appeal to the Secretary to properly grieve the matter in compliance with the procedural

requirements of the administrative grievance process.  Plaintiff, however elected to file an "Emergency Grievance" with the Secretary of the FDOC, but it was returned without action as being in non-compliance with the Rules.  Defendants' Exhibit (Doc. 68-5 at 5-6).

Plaintiff labeled his grievance an emergency grievance, calling it a protective activity seeking protection against retaliation.  _Id_. at 6.  He wrote: "I believe there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level."  _Id_.  The Response reads as follows:

> NOTE: This grievance is not accepted as a grievance of an emergency nature[.]
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your grievance at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules[.]
>
> You have not provided any information or evidence to substantiate your fear of reprisal[.]
>
> The institution should be given the opportunity to respond to your issue[.]
>
> If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process[.]
>
> Based on the foregoing information, your grievance is returned without action[.]

Defendants' Exhibit (Doc. 68-5 at 5).

By definition, an emergency grievance is "[a] grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." F.A.C. § 33-103-002(4).  An inmate may proceed directly to this step if he is submitting an emergency grievance and he (1) states at the beginning of Part A of Form DC1-303 that the grievance concerns an emergency; and (2) clearly states "the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility[.]" Id. § 33-103.007(6)(a)(1)-(2).

In this instance, the reviewer found no valid reason within the grievance for by-passing the lower levels and determined the grievance to be in non-compliance with the rules.[4]  Id. § 33-103.014(1)(f) ("[t]he inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable.").  Thus, the grievance was returned without action.

---

[4] The reviewer found Plaintiff did not provide any information or evidence to support his claim of fear of reprisal, unlike the inmate in Dimanche v. Brown, 783 F.3d 1204, 1212-13 (11th Cir. 2015) (an inmate must clearly state his reason for by-passing the required routine steps for exhausting his administrative remedies, like fear of being killed by identified, high-ranking institutional officials).  Plaintiff simply stated he believed there would be adverse actions by unnamed officers.

Given these facts, even assuming the grievance constituted an attempt to exhaust administrative remedies with regard to the May 29, 2015 incident at SCI, Plaintiff failed to comply with critical procedural rules to exhaust his available administrative remedies. As such, there was not proper exhaustion.

Plaintiff has not demonstrated that he has exhausted his administrative remedies with respect to his claims against the Defendants. In fact, the documents before the Court demonstrate otherwise. Plaintiff never properly grieved his claims and the institutional records demonstrate that Plaintiff never properly and completely grieved his claims by complying with the critical procedural rules.

Upon review, the Court finds that the administrative process was available to Plaintiff; it did not operate as a simple dead end, it was clearly capable of use, and prison administrators did not thwart the use of the process through machination, misrepresentation, or intimidation. Based on all reasonable inferences, Plaintiff had access to the grievance process and submitted a document for review, although not in compliance with the Rules. Indeed, Plaintiff's grievance was specifically rejected for non-compliance with the administrative rules. Plaintiff has not shown that he properly filed a grievance against these Defendants concerning the events that occurred at SCI and fully

exhausted his administrative remedies in compliance with the procedural rules prior to bringing his civil rights action.

It is axiomatic that an inmate plaintiff is required to exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Plaintiff has not provided the Court with copies of any grievances or grievance responses or other information demonstrating proper exhaustion of administrative remedies, using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits. Plaintiff never gave the institution an opportunity to respond to his issue by filing an initial grievance with appropriate staff, a formal grievance with the warden of SCI, and then an appeal to the Secretary. Thus, he did not comply with the procedural requirements of the administrative grievance process. The record evidence shows that Plaintiff did not properly exhaust his administrative remedies with regard to his claims concerning the events at SCI on May 29, 2015.

In conclusion, Plaintiff failed to exhaust his administrative remedies before filing a lawsuit to seek judicial redress. Therefore, the Court concludes the Defendants' Motion should be granted for Plaintiff's failure to exhaust his administrative remedies against the Defendants. According to the PLRA, exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may

be initiated in this Court, and Plaintiff failed to properly avail himself of this process.

## V. Eleventh Amendment Immunity

Defendants raise the defense of sovereign immunity to the extent Plaintiff is seeking monetary damages against them in their official capacities. Motion at 17. Plaintiff plainly states that he is suing the Defendants in their individual capacities, not their official capacities. Response at 3. As such, he is not seeking monetary damages against the Defendants in their official capacities.

## VI. The Claims

In his Statement of Claim, Plaintiff references the Eighth Amendment to the United States Constitution. He makes no reference to any other amendments to the Constitution. Plaintiff contends that Defendants Renninger and Greene were deliberately indifferent to his serious medical needs, and Defendant Greene violated his Eighth Amendment rights through verbal sexual harassment. Third Amended Complaint at 9.

Plaintiff alleges that Defendant Greene made sexual comments about Plaintiff's body. Id. at 14. As a result of this verbal abuse, Plaintiff states he was subjected to some humiliation. Defendants' Motion is due to be granted with respect to Plaintiff's claim of verbal sexual harassment. To the extent Plaintiff attempts to raise a claim of retaliation in the body of the Third

Amended Complaint, Defendants' Motion is due to be granted.
Liberally construing the Statement of Facts in the pro se Third
Amended Complaint, Plaintiff alleges that the Defendants threatened
him with harm if Plaintiff wrote grievances or lawsuits against
them or declared more medical emergencies. Id. at 13.

With respect to the alleged use of abusive language and verbal
threats, such allegations do not state a claim of federal
constitutional dimension. See Hernandez v. Fla. Dep't of Corr.,
281 F. App'x. 862, 866 (11th Cir. 2008) (per curiam) (citing
Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989))
("Hernandez's allegations of verbal abuse and threats by the prison
officers did not state a claim because the defendants never carried
out these threats[,] and verbal abuse alone is insufficient to
state a constitutional claim.").

> "[M]ere threatening language and gestures of a
> custodial office do not, even if true, amount
> to constitutional violations." Coyle v.
> Hughes, 436 F.Supp. 591, 593 (W.D. Okl[a].
> 1977). "Were a prisoner . . . entitled to a
> jury trial each time that he was threatened
> with violence by a prison guard, even though
> no injury resulted, the federal courts would
> be more burdened than ever with trials of
> prisoner suits . . . ." Bolden v. Mandel, 385
> F.Supp. 761, 764 (D. Md. 1974). See Johnson
> v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.
> 1973) (the use of words, no matter how
> violent, does not comprise a section 1983
> violation).

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464
U.S. 998 (1983).

It is important to note that,

> "The First Amendment forbids prison
> officials from retaliating against prisoners
> for exercising the right of free speech."
> <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th
> Cir.2003). "It is an established principle of
> constitutional law that an inmate is
> considered to be exercising his First
> Amendment right of freedom of speech when he
> complains to the prison's administrators about
> the conditions of his confinement." <u>Smith v.</u>
> <u>Mosley</u>, 532 F.3d 1270, 1276 (11th Cir.2008)
> (citing <u>Farrow</u>, 320 F.3d at 1248).
>
> An inmate may maintain a cause of action
> for retaliation under 42 U.S.C. § 1983 by
> showing that a prison official's actions were
> "the result of [the inmate's] having filed a
> grievance concerning the conditions of his
> imprisonment." <u>Farrow</u>, 320 F.3d at 1248
> (quotation marks omitted and emphasis added).
> To establish a First Amendment retaliation
> claim, a prisoner need not allege the
> violation of an additional separate and
> distinct constitutional right; instead, the
> core of the claim is that the prisoner is
> being retaliated against for exercising his
> right to free speech. <u>Id</u>. To prevail on a
> retaliation claim, the inmate must establish
> that: "(1) his speech was constitutionally
> protected; (2) the inmate suffered adverse
> action such that the [official's] allegedly
> retaliatory conduct would likely deter a
> person of ordinary firmness from engaging in
> such speech; and (3) there is a causal
> relationship between the retaliatory action
> [the disciplinary punishment] and the
> protected speech [the grievance]." <u>Mosley</u>, 532
> F.3d at 1276.10

<u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (per

curiam) (footnote omitted), <u>cert</u>. <u>denied</u>, 568 U.S. 949 (2012).

To the extent Plaintiff attempted to raise a First Amendment

retaliation claim in his Third Amended Complaint, Defendants'

16

Motion is due to be granted. There is no mention made of the First Amendment in the Third Amended Complaint, and Plaintiff completely fails to flesh out a First Amendment retaliation claim, although given sufficient opportunity to properly amend his complaint. He certainly does not maintain that he previously filed grievances concerning the conditions of his confinement, and the Defendants' actions were in response to those complaints. Instead, he simply states that the Defendants verbally threatened him in response to Plaintiff's repeated demands for immediate attention. His vague and conclusory retaliation claim will certainly not withstand Defendants' Motion. See Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (per curiam) (retaliation claims that do not rise above the speculation level will not survive).

To the extent Plaintiff is also attempting to raise an Eighth Amendment claim concerning the conditions of his confinement, Defendants' Motion is also due to be granted. In his factual allegations, Plaintiff states he was placed on property restriction as a result of his disciplinary violation, and he was confined in a cold cell for seventy-two hours in his boxers, without a mattress, sheets and blanket. Third Amended Complaint at 13.

With respect to Plaintiff's Eighth Amendment claim:

> The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The "cruel and unusual punishments" standard applies to the conditions of a prisoner's

confinement. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 2398-99, 69 L.Ed.2d 59 (1981). While "the primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment," the Supreme Court's "more recent cases [show that] [t]he [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (marks, citations, and brackets omitted). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." <u>Rhodes</u>, 452 U.S. at 346, 101 S.Ct. at 2399 (marks and citation omitted).

Even so, "the Constitution does not mandate comfortable prisons." <u>Id</u>. at 349, 101 S.Ct. at 2400. If prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id</u>. at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." <u>Id</u>.

<u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288-89 (11th Cir. 2004) (footnote omitted).

To establish an Eighth Amendment conditions of confinement claim, a plaintiff must show that a prison official was deliberately indifferent to a substantial risk of serious harm to the inmate. <u>Bennett v. Chitwood</u>, 519 F. App'x 569, 573 (11th Cir. 2013) (per curiam) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994)). "The deliberate-indifference test has two elements,

consisting of an objective and a subjective component." _Id._ (citing _Farmer_, 511 U.S. at 834).

To satisfy the objective, "substantial risk of serious harm" component, a plaintiff "must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted in the denial of the minimal civilized measure of life's necessities." _Cottrell v. Caldwell_, 85 F.3d 1480, 1491 (11th Cir. 1996). "The challenged condition must be 'extreme'": the prisoner must show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." _Chandler v. Crosby_, 379 F.3d 1278, 1289 (11th Cir. 2004). In evaluating an Eighth Amendment claim, we consider both the "severity" and the "duration" of the prisoner's exposure to extreme temperatures. _Id_. at 1295. Merely showing that prison conditions are uncomfortable is not enough. _Id_. at 1289.

For the subjective component, the prison official must (1) have subjective knowledge of the risk of serious harm, and (2) nevertheless fail to respond reasonably to the risk. _Farmer_, 511 U.S. at 837, 114 S.Ct. at 1979. Subjective knowledge on the part of the prison official requires that the official was aware of the facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official actually drew that inference. _Burnette v. Taylor_, 533 F.3d 1325, 1330 (11th Cir. 2008). A prison official must have a sufficiently culpable state of mind to be deliberately indifferent. _Carter v. Galloway_, 352 F.3d 1346, 1349 (11th Cir. 2003). "[T]he evidence must demonstrate that with knowledge of the infirm conditions, the official knowingly or

recklessly declined to take actions that would
have improved the conditions." Thomas v.
Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010)
(alteration and quotation omitted). Mistakes
and even negligence on the part of prison
officials are not enough for a constitutional
violation. Crosby, 379 F.3d at 1289.

Bennett, 519 F. App'x at 574.

Here, with respect to the objective component of Plaintiff's
Eighth Amendment claim, Plaintiff does not present in his Complaint
the sort of extreme conditions that violate contemporary standards
of decency. With respect to the subjective component, Plaintiff
was already confined in an inpatient transitional care unit. The
circumstances of which Plaintiff complains do not reflect that he
was subjected to the type of extreme conditions that pose an
unreasonable risk of serious damage to his health or safety.

Of note, this incident happened in Florida in late spring, May
29, 2015. Therefore, even if it were chilly, it was certainly not
a life-threatening or health-endangering situation.[5] As noted by

---

[5] Of import, SCI is located in Live Oak, Florida. The average
low temperature in Live Oak, Florida in May is 62 degrees, and the
average high is 89 degrees. See U.S. Climate Data,
http://www.usclimatedata.com. Although Plaintiff alleges that it
felt like 50 degrees in his cell and he had been told that the
prison thermostat was set at "40-something degrees[,]" Deposition
(Doc. 86-1 at 7), Plaintiff was confined indoors, in late spring,
in Florida. The denial of bedding and comfort items and the
circumstances of which Plaintiff complains "do not reflect that he
was subject to the type of extreme conditions that posed an
unreasonable risk of serious damage to health or safety." Edler v.
Gielow, No. 3:08cv530/WS/EMT, 2010 WL 3958014, at *7 (N.D. Fla.
Oct. 7, 2010) (not reported in F.Supp.2d).

Defendants, Plaintiff was temporarily deprived of his property for seventy-two hours, and the seizure of his property was a result of a disciplinary violation and not unconstitutional. Davis v. Crew, No. 4:13-cv-504-MW/CAS, 2014 WL 961210, at *8 (N.D. Fla. Mar. 11, 2014). Plaintiff's discomfort for a few days does not amount to an inhumane condition of confinement or an extreme deprivation. Farmer v. Brennan, 511 U.S. at 832.

An official must know of and disregard an excessive risk to an inmate's health or safety, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must draw that inference. Farmer v. Brennan, 511 U.S. at 837. Here, Defendants did not disregard an excessive risk to Plaintiff's health by placing him on property restriction for seventy-two hours. Defendants' Motion is thus due to be granted in this respect.

Upon review of Plaintiff's Statement of Claim, it is clear that the heart of the Third Amended Complaint is Plaintiff's contention that the Defendants were deliberately indifferent to his serious medical needs. The requirements to establish an Eighth Amendment claim with respect to medical care are:

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an

21

> objectively serious [medical] need, an
> objectively insufficient response to that
> need, subjective awareness of facts signaling
> the need, and an actual inference of required
> action from those facts." <u>Taylor v. Adams</u>,
> 221 F.3d 1254, 1258 (11th Cir. 2000).

<u>Kuhne v. Fla. Dep't of Corr.</u>, 745 F.3d 1091, 1094 (11th Cir. 2014).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)).

To satisfy the subjective component, a plaintiff must prove the following:

> "(1) subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than [gross] negligence."
> <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272 (11th
> Cir. 2005) (alteration in original) (internal
> quotation marks omitted). Although we have
> occasionally stated, in dicta, that a claim of
> deliberate indifference requires proof of
> "more than mere negligence," <u>McElligott v.</u>
> <u>Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999),
> our earlier holding in <u>Cottrell</u>, 85 F.3d at
> 1490[6], made clear that, after <u>Farmer v.</u>
> <u>Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128
> L.Ed.2d 811 (1994), a claim of deliberate
> indifference requires proof of more than gross
> negligence.

---

[6] <u>Cottrell v. Caldwell</u>, 85 F.3d 1480 (11th Cir. 1996).

<u>Townsend v. Jefferson County</u>, 601 F.3d 1152, 1158 (11th Cir. 2010).

A plaintiff must demonstrate that a defendant's responses to his medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-106 (1976)), <u>cert</u>. <u>denied</u>, 531 U.S. 1077 (2001). As such, Plaintiff must have had an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from the facts presented. <u>Taylor v. Adams</u>, 221 F.3d at 1258.

Firstly, the Court is not convinced that Plaintiff has established an objectively serious medical need with regard to his claimed heart condition and complaint of "blanking out." Although Plaintiff states that the medical records will show his serious medical needs, that is not the case. Dr. Albert Maier, in his Declaration (Doc. 68-4 at 1), states there is "no organic basis' for Plaintiff's complaints of chest pain. Although Plaintiff does have hypothyroidism, gastro, esophageal reflux disease, and hypertension with dyslipidemia, these chronic conditions are not the source of chest pain. <u>Id</u>. No medical documentation supports Plaintiff's complaints of blanking out. <u>Id</u>. at 2. "It should be

noted that the existing medical records reveal no evidence of heart issues nor consciousness issues." Id.

Indeed, the medical records do not show that Plaintiff made these medical complaints (head and chest pains and blanking out) while confined at SCI until 2016, after the filing of the original civil rights Complaint in 2015.[7] Id. It is important to note that Dr. Maier states that Plaintiff does have an extensive documented history of mental health issues, for which he is under current care. Id.

Upon review of the medical records submitted by Plaintiff, they do not support his claim of a serious heart condition. In fact, the medical records state there is no heart murmur/chest pain and there is no reported dizziness or blurred vision with regard to past and present medical history. Plaintiff's Exhibit (Doc. 86-2 at 1). The only reference to a "large heart" is per Plaintiff's mother's statement to a medical provider back in 1996. Plaintiff's Exhibit (Doc. 86-8 at 1). Again, the complaints in the FDOC's medical records of black outs and headaches are from 2016, not from

---

[7] When Plaintiff complained about blacking out, dizziness and his head hurting in 2016, the nurse opined that it may be caused by low blood pressure issue, orthostatic hypotension (a substantial drop in blood pressure when a person moves from a seated or supine position to a standing position). Plaintiff's Exhibit (Doc. 86-16 at 1). When Plaintiff complained of head pain, he was given over-the-counter medication, Pain-Off, a pain reliever containing Acetaminophen, Aspirin, and caffeine. Plaintiff's Exhibit (Doc. 68-10 at 3). See Medique, Pain-Off, https//www.mediqueproducts.com.

2015.[8]  Plaintiff's Exhibit (Doc. 86-16); Plaintiff's Exhibit (Doc. 86-17).

Even assuming Plaintiff had a serious medical need, the nurse, the medical provider on the wing, saw Plaintiff and informed him that his medical state did not constitute a medical emergency.  In his Deposition, Plaintiff said that after he passed out and got back up, Defendant Renninger and the nurse were passing by his cell.  Deposition (Doc. 86-1 at 6).  Plaintiff told them he was having chest pains and was blanking out.  Id.  Plaintiff described his conversation with Nurse Hopkins when she came back on the wing:

> I got to the door off the floor after like a minute-and-a-half, and I was telling the nurse, Nurse – Nurse Hopkins and Officer Renninger [her escort], and they said, if you're not cutting or bleeding, it's not no medical emergency.  You know, it's not - if you're not cutting or bleeding, it's not no medical emergency.  And I was telling them that, you know, I - I have a severe medical condition.

---

[8]  In his Deposition, Plaintiff claimed to have suffered a blood clot on the brain in 1996, when he was thirteen years old. Deposition (Doc. 86-1 at 3).  There are Psychiatric Admission Notes, psychosocial comments on a Neurosurgical Intensive Care Unit Assessment, Psychosocial Evaluation notes, the results of a Mental Status Examination, notes concerning Tissue Perfusion Alteration-Cerebral, and Cognitive Exam results (Docs. 86-2 to 86-14).  The medical staff described Plaintiff as stable and rested, and subsequently easily aroused, with no complaints of headache pain. Plaintiff's Exhibit (Doc. 86-3 at 1).  It was also noted that all of his limbs moved with equal power.  Id.  The level of consciousness is described as alert.  Plaintiff's Exhibit (Doc. 86-9 at 1).  He was discharged to jail on September 18, 1996. Plaintiff's Exhibits (Doc. 86-5 at 1) & (Doc. 86-6 at 1).

_Id_.

Plaintiff attested that the nurse came by again with Defendant Renninger around 3:00 or 3:30 p.m.,[9] and the nurse still denied Plaintiff's medical emergency. _Id_. at 9. Plaintiff mentioned that a different nurse came by with Defendants Greene and Renninger, and Plaintiff informed the nurse that he had a medical emergency consisting of blanking out accompanied by severe chest pains. _Id_. at 13. Plaintiff did not recall the nurse's response, but she did not send or take him to medical. _Id_. Apparently, Nurse Hopkins visited him at least twice, and a different nurse came around once to see him. _Id_.

Secondly, Plaintiff has not demonstrated an objectively insufficient response to his medical needs. Although the Defendants may have had harsh words for Plaintiff, two different nurses saw Plaintiff that night, and they did not consider his complaints or physical condition a medical emergency or respond as if Plaintiff's health was at risk if he did not receive immediate medical care rather than accessing routine sick call.

Thirdly, Plaintiff must show subjective awareness of facts signaling the need and an actual inference of required action from the facts presented. Although Plaintiff told the Defendants he was having pain and blanking out, the medical staff on the wing did not

---

[9] Corrections officers escort nurses on the wings. Deposition (Doc. 86-1 at 13).

find Plaintiff's condition to present dire or exigent circumstances requiring immediate medical attention.

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." <u>Mann</u>, 588 F.3d at 1307 (quoting <u>Hill v. Dekalf Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994), <u>abrogated</u> <u>on other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002)).

Here, Plaintiff's condition was not so obvious that a lay person would recognize the necessity for a doctor's attention. Plaintiff's medical need was not of a kind that would be open and obvious to any lay person, such as a wound typically resulting from violent trauma. Plaintiff "has not presented record evidence demonstrating that his situation was so obviously dire" that is should have been obvious to a lay officer that delay would exacerbate the medical condition and the matter should be treated as an emergency. <u>Lelieve v. Oroso</u>, 846 F.Supp.2d 1294, 1306 (S.D. Fla. 2012). Also, Plaintiff's medical condition is not of a kind that would be apparent (or, if apparent, is not of a kind that would be understood by a lay person in terms of its seriousness or its treatment). The record also shows that Plaintiff received some

medical attention;[10] therefore, the only way the he can effectively create a genuine issue of fact defeating an adverse motion for summary judgment is to produce some opinion evidence from a health care provider. Plaintiff's expression of lay opinion will not suffice to create a triable issue especially given the standard is one of gross incompetence amounting to deliberate indifference as distinguished from medical negligence.

Moreover, based on the record evidence, medical professionals (nurses) determined that Plaintiff "was not presenting an emergency[.]" See Townsend, 601 F.3d at 1159 (concluding that officers may rely on the medical professional's judgment, unless evidence is presented that the officers must have known that the medical professional grossly misjudged the inmate's condition). No operative evidence has been presented supporting any contention that the nurses misjudged Plaintiff's situation or that a life-threatening or other dire medical condition was exhibited and ignored.

Delay in providing treatment may rise to the level of an Eighth Amendment violation:

> Our cases, too, have recognized that
> prison officials may violate the Eighth
> Amendment's commands by failing to treat an

---

[10] Here, Plaintiff received some medical attention from nurses on the wing. He was observed by and spoke to two different medical professionals, and neither one decided that Plaintiff's complaints or observable condition required emergency medical attention and could not be properly addressed through routine sick calls.

inmate's pain. In <u>Brown v. Hughes</u>, 894 F.2d
1533 (11th Cir. 1990), we recognized that the
delay of a few hours in treating an inmate's
broken foot could constitute a violation of
the Eighth Amendment, holding that the failure
to treat the pain from a broken foot, even for
a few hours, was a constitutionally cognizable
injury. "With this type of injury, it may be
that deliberately indifferent delay, no matter
how brief, would render defendants liable as
if they had inflicted the pain themselves.
Deliberately inflicted pain, as with an
electric cattle prod, does not become
unimportant and unactionable under the eighth
amendment simply because the pain produced is
only momentary." <u>Id</u>. at 1538; <u>Washington v.
Dugger</u>, 860 F.2d 1018, 1021 (11th Cir. 1988)
(reversing grant of summary judgment to prison
officials on inmate's claim that delay in
providing treatments that "eliminated pain and
suffering at least temporarily" constituted
deliberate indifference); <u>Aldridge v.
Montgomery</u>, 753 F.2d 970, 972–73 (11th Cir.
1985) (reversing directed verdict to officers
who failed to provide ice pack and aspirin for
pain caused by bleeding cut); <u>see also</u> <u>Ralston
v. McGovern</u>, 167 F.3d 1160, 1162 (7th Cir.
1999) (reversing grant of summary judgment to
prison guard who failed to provide pain
medication to inmate); <u>Boretti v. Wiscomb</u>, 930
F.2d 1150, 1154–55 (6th Cir. 1991)
(recognizing that "a prisoner who suffers pain
needlessly when relief is readily available
has a cause of action against those whose
deliberate indifference is the cause of his
suffering.").

<u>McElligott v. Foley</u>, 182 F.3d 1248, 1257 (11th Cir. 1999).

In order to show a deprivation of a constitutional dimension
based on delay in medical treatment, an inmate "must place
verifying medical evidence in the record to establish the
detrimental effect of delay in medical treatment to succeed."
<u>Hill</u>, 40 F.3d at 1187-88.  See <u>McDaniels v. Lee</u>, 405 F. App'x 456,

458-59 (11th Cir. 2010) (recognizing that to survive summary judgment, an inmate must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury). This, Plaintiff has not done.  Not only has Plaintiff not demonstrated the seriousness of his medical need, he has not shown, through verifying medical evidence, that any delay worsened a medical condition or exacerbated a medical problem.  Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007).  Indeed, Plaintiff has failed to show, through the medical records and evidence he submitted, that he suffered any injury attributable to the Defendants' alleged deliberate indifference in delaying his medical care.  In sum, Plaintiff has failed to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . ." Jacoby v. Baldwin Cty., 596 F. App'x 757, 767 (11th Cir. 2014) (per curiam) (quoting Hill, 40 F.3d at 1187).  Plaintiff's contentions are insufficient to create a genuine issue of material fact on his deliberate indifference claim against Defendants Renninger and Greene.

## VII.  Physical Injury

Plaintiff has failed to present any medical evidence that he suffered injuries as a result of the Defendants' actions. Plaintiff, in his Deposition, states that the Defendants' actions caused him emotional distress.  Deposition (Doc. 86-1 at 14).  He explained that he had a past injury, and he feared that he could

have had a heart attack or a stroke.  Id. at 14-15.  Plaintiff's
fear and conjecture is insufficient to create a genuine issue of
material fact.   Emotional distress and anguish accompanied by
headaches, dizziness and heart palpitations constitutes nothing
greater than a de minimis injury.   In this action, Plaintiff is
seeking damages for mental or emotional injury and is barred from
seeking compensatory damages pursuant to 42 U.S.C. § 1997e(e).

Plaintiff states that he is seeking $300,000.00 in
compensatory damages, jointly and severally, and $50,000.00 in
"nominal" damages against each Defendant.   Third Amended Complaint
at 19.   Even a liberal construction of Plaintiff's Complaint does
not support a contention that he is seeking nominal damages.[11]
Honors v. Judd, No. 8:10-cv-22-T-33AEP, 2011 WL 3498287, at *6
(M.D. Fla. Aug. 10, 2011) (not reported in F.Supp.2d) (noting that
in Hughes v. Lott, 350 F.3d 1157 (11th Cir. 2003), the Eleventh
Circuit held that 1997e(e) does not bar suits by prisoners if they
have not alleged a physical injury if they seek nominal damages,
but finding that "Honors claim does not fall within that narrow
exception as he is seeking, among other things, an award of
punitive and compensatory damages"); McCiskill v. Thompson, No.

---

[11] A request for a large sum of money does not constitute a
request for nominal damages, of which $1.00 is the norm, "as
nominal damages implies a mere token or trifling."   Williams v.
Langford, No. 2:13-cv-315-J-FtM-38CM, 2015 WL 163226, at *7 (M. D.
Fla. Jan. 12, 2015) (not reported in F.Supp.3d).   A request for
$50,000.00 from each Defendant is a request for a substantial sum
of money, $100,000.00, not a mere token.

3:10cv211/MCR/MD, 2010 WL 4483408, at *3 n.4 (N.D. Fla. Sept. 22, 2010) (not reported in F.Supp.2d) (holding that the narrow exception in Hughes v. Lott with regard to a nominal damages claim does not apply because McCiskill seeks punitive damages and attorneys' fees, not nominal damages), report and recommendation adopted by 2010 WL 4457182 (N.D. Fla. Oct. 29, 2010).

Plaintiff's case does not fall within the narrow exception as he is seeking, among other things, an award of $300,000.00 in compensatory damages, and $50,000.00 from each Defendant, in what he calls "nominal" damages. The Court concludes that "Plaintiff's complaint cannot be liberally construed as requesting nominal damages," based on the fact that Plaintiff is clearly seeking substantial damages: $300,000.00 in compensatory damages, and $50,000.00 in other damages against each defendant, certainly not a trifling amount. Honors v. Judd, 2011 WL 3498287, at *6 n.2. See Eloy v. Guillot, 289 F. App'x 339, 346 n.15 (11th Cir. 2008) (citing Carey v. Piphus, 435 U.S. 247, 248, 266-67 (1978) (explaining nominal damages and relating that in a civil rights action in which the plaintiff does not suffer actual injury, the plaintiff is not entitled to recover substantial non-punitive damages for a constitutional violation, but instead may be awarded a nominal sum, not to exceed one dollar)).

# VIII. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. The Eleventh Circuit provides the following guidance in reviewing a claim of entitlement to qualified immunity:

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003). This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under Saucier, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act. 533 U.S. at 201, 121 S.Ct. at 2156. If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. Holloman, 370 F.3d at 1264.

Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), cert. denied, 559 U.S. 940 (2010). This Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam).

It is undisputed that the Defendants were engaged in discretionary functions during the events in question. These Defendants did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 68) is **GRANTED**, and the **Clerk** shall enter judgment for Defendants K. Renninger and Lt. J Greene and against the Plaintiff.

2. The **Clerk** shall terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of September, 2017.

BRIAN J. DAVIS
United States District Judge

sa 9/5
c:
Jerald Gipson
Counsel of Record